UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _4/25/2022_

---

MALIKA HERON,

                          Plaintiff,

   -against-

MEDRITE TESTING, LLC,
CHRISTOPHER SCHRIER, and
JANE DOE,

                          Defendants.

No. 21 Civ 09471 (CM)

---

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

McMahon, J.:

In this action, Plaintiff Malika Heron sues her former employer, Medrite Testing, LLC, and Christopher Schrier (together, "Defendants"), alleging that she was fired in retaliation for exercising her rights as guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.* (the "NYCHRL").  Plaintiff seeks an award of compensatory damages, punitive damages, and attorney's fees.  *See* First Amended Complaint, Dkt. No. 16, filed January 10, 2022.

Defendants move to dismiss the First Amended Complaint for failure to state a claim up which relief can be granted.  For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

# BACKGROUND

## A. Parties

Plaintiff Malika Heron is a twenty-year-old individual who lives in New York City, New York. She was at one time employed by Defendant Medrite Testing, LLC.  FAC ¶¶ 4, 8.

Defendant Medrite Testing, LLC is a New York limited liability company in the business of providing in-home medical testing services.  FAC ¶¶ 5-6.  Its central facility is located at 344 W 51st St. in Manhattan.  FAC ¶ 7.

## B. Facts

Plaintiff was hired by Defendant Medrite Testing to work as a medical assistant out of Medrite's central facility on March 15, 2021.  Her employment commenced on March 16, 2021. Her job was to drive a Medrite vehicle from the central facility to patients' homes, to administer medical tests by collecting body fluid samples, and to return the samples to the central facility. Plaintiff alleges that, up until the days before her termination, she performed her duties with her co-workers without incident.  FAC ¶ 10.

On March 29, 2021 (two weeks after she started work), Plaintiff was assigned to work with Mr. Samuel Rodriguez.  FAC ¶ 11.  According to the FAC, Mr. Rodriguez is roughly thirty years old.  FAC ¶ 12.  Plaintiff alleges that, throughout the course of the day on the job, Mr. Rodriguez repeatedly asked her probing questions about her love life. FAC ¶ 13. Plaintiff did not call Mr. Rodriguez out directly on his inappropriate line of questioning; instead, she attempted to change the subject.  *Id.*

Plaintiff did not report Mr. Hernandez to anyone at Medrite Testing.  FAC ¶ 14.

The next day, on March 30, 2021, Plaintiff was again assigned to work with Mr. Rodriguez for that day.  FAC ¶ 15.  He drove the Medrite vehicle while she rode next to him in the passenger

seat.  *Id*.  Mr. Rodriquez again asked Plaintiff questions about her love life and purportedly referred to Plaintiff and to women in general as "bitches."  *Id*.

Plaintiff alleges that, when Mr. Rodriguez parked the Medrite car at a client's home, Plaintiff did not immediately get out of the vehicle and hoped "that he would exit the vehicle to provide physical distance between them." FAC ¶ 16.  Instead of getting out of the car, Mr. Rodriguez "physically pushed [Plaintiff] and called her a bitch."  *Id*.  In response, Plaintiff alleges that she "push[ed] back against him in his collar area," and "insisted that he stop touching her and berating her as a woman." FAC ¶ 17.  Plaintiff states that only then did it become clear to Rodriguez that his behavior was not acceptable to Plaintiff, and that he "sheepishly exited the car." FAC ¶ 18.  Rodriguez performed the testing service for that client while Plaintiff waited in the parked car outside the client's home.  *Id*.

At the end of the workday, Plaintiff returned to the central facility where she filled out paperwork and logged the patient samples collected that day while Rodriguez stayed outside with the Medrite vehicle.  FAC ¶ 21.  While inside the facility, Plaintiff asserts (vaguely) that she asked "Manager David" whether a fellow employee would be fired if she were to complain about them, to which he replied, "No."  *Id*.  Plaintiff provides no further information about her conversation with Manager David, nor does she specify whether Manager David was her direct manager.  She asserts that Manager David went outside to speak with Rodriguez in the course of conducting certain "day-end check-out procedure of [Medrite] Testing's vehicle." FAC ¶ 22.   Plaintiff suspects that it was then that Rodriguez complained to Manager David that Plaintiff had "choked" him.  FAC ¶ 23.

Plaintiff alleges that, when she left the Medrite central facility for the day, she "continued to contemplate to whom and how she would allay the hostile situation." FAC ¶ 24. But she does not allege that she spoke to anyone at Medrite (or otherwise) about the incidents with Rodriguez.

When Plaintiff arrived at the central facility for work the following day (March 31), that she was immediately informed that she would not be assigned to a work detail for the day, and that she was asked to sit outside the human resources office to await for further instruction. FAC ¶ 26. Plaintiff does not specify who gave her these instructions. After waiting nearly two hours, she was summoned into the human resources office by Defendant Christopher Schrier to meet with another unnamed "supervisor." FAC ¶ 27. Plaintiff pleads that Defendant Schrier was "a supervisor," but it is not clear whether he was *her* supervisor at Medrite Testing; her complaint does not identify Defendant Schrier's title or job function.

Inside the human resources office, the unnamed supervisor presented Plaintiff with a typed statement and instructed her to read it. FAC ¶ 28. By reading the statement as she was asked to do, Plaintiff alleges that she "learned that [Rodriguez] had complained about her," to Medrite and had painted her as the "aggressor" in the situation. *Id*. Plaintiff alleges that the statement reflected that Rodriguez had admitted to using the term "bitch" in his communications with Plaintiff. She provides no further information about the contents of the typed statement that was given to her. Plaintiff pleads that she responded by exclaiming, "I did not 'choke' him while driving. Do you want to hear my side of the story and what really happened?" *Id*. The unnamed supervisor responded, "No, our company has a strict policy against touching other employees, so you are fired." FAC ¶ 29. The unnamed supervisor then demanded that Plaintiff surrender her company identification badge and leave the central facility immediately. FAC ¶ 30.

Plaintiff alleges that she responded, "He was touching her [I assume this means "my"] face, and I asked if they would fire him." FAC ¶ 31.   The supervisor stated that he would talk to Mr. Rodriguez but told Plaintiff to leave the building because her employment was terminated.  FAC ¶ 32.

Plaintiff alleges that Defendant Medrite's "retaliatory choice to fire Ms. Heron for her complaint about unlawful workplace activity," caused her emotional distress and economic damages from the loss of her job.  FAC ¶¶ 34-36.  She does not specify what "complaint" she is referring to; Plaintiff does not allege that she complained to anyone about Mr. Rodriguez before she was terminated.

### C. Procedural Posture

Plaintiff commenced this action by filing a complaint against Defendants on November 16, 2021.  Dkt. No. 1.  In her original complaint, Plaintiff asserted nine claims against Defendants under Title VII, the NYSHRL, and the NYCHRL, for sex discrimination and for retaliation.  On January 7, 2022, Defendants moved to dismiss Plaintiff's original complaint. Dkt. No. 12.  On January 10, 2022, Plaintiff filed the First Amended Complaint (the "FAC"). Dkt. No. 16.  In the FAC, Plaintiff has dropped any claim for sex discrimination.  Instead, she brings retaliation and aiding and abetting claims against Defendants under Title VII, the NYSHRL, and the NYCHRL; and a vicarious liability claim against Medrite under the NYCHRL.

Presently before the court is Defendants' joint motion to dismiss the FAC. *See* Dkt. No. 20. Defendants move to dismiss the FAC for failure to state a claim upon which relief can be granted.  Furthermore, Defendants argue that, because Plaintiff's only federal claim (Count I for retaliation in violation of Title VII) fails, this court should decline to exercise supplemental jurisdiction over the remaining state and city law claims.

For the reasons set forth below, Defendants' motion is GRANTED.

## LEGAL STANDARD

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve "facial plausibility," a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, the plaintiff must allege facts that "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Further, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The court may consider the full text of documents that are cited in, incorporated by reference in, or "integral" to the complaint. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 809 (2d Cir. 1996).

## DISCUSSION

Plaintiff asserts six claims against Defendants. Count 1 – the only claim arising under federal law – is a Title VII retaliation claim brought only against Medrite Testing.  Counts 2 and 3 are retaliation and aiding & abetting claims under the NYSHRL against all Defendants. Counts

4 and 5 are retaliation and aiding & abetting claims under the NYCHRL against all Defendants. Count 6 is a vicarious liability claim brought under the NYCHRL against Medrite Testing.

## I.   THE TITLE VII RETATLIATION CLAIM IS DISMISSED.

Count I is a Title VII retaliation claim against Defendant Medrite Testing, LLC.  Title VII, which prohibits an employer from discriminating against an employee on the basis of sex or gender, makes it unlawful for an employer to retaliate against an employee who "opposes" any practice that Title VII forbids.  42 U.S.C.A. § 2000e–3(a).  Title VII retaliation claims are analyzed using the *McDonnell Douglas* three-part burden-shifting framework. *Zann Kwan v. Andalex Grp*. LLC, 737 F.3d 834, 843 (2d Cir. 2013).

Under *McDonnel Douglas*, the burden initially falls on a plaintiff to plead a *prima facie* retaliation case. To state a *prima facie* case, Plaintiff must allege (1) that he participated in a protected activity, (2) that his participation was known to his employer, (3) that his employer thereafter subjected him to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action.  *Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 552 (2d Cir. 2010). The plaintiff's burden of proof at the *prima facie* stage is *de minimis*. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  If and when the initial burden is met by the plaintiff, a "presumption of retaliation" arises, which the defendant may rebut by "articulating a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 173 (2d Cir. 2005).  If the defendant provides such a reason, "the presumption of retaliation dissipates," and the burden shifts back to the plaintiff to prove "that the desire to retaliate was the but-for cause of the challenged employment action." *Id*. (citation omitted).

To establish a prima facie case of retaliation under Title VII, an employee plaintiff must establish that: (1) she was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) she suffered a materially adverse action; and (4) there is a causal connection[1] between her protected activity and the materially adverse action.  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012).   Although Plaintiff "is not required to specifically plead every element of a *prima facie* case to survive a motion to dismiss," she "must plead facts sufficient to render his or her retaliation claim facially plausible under *Twombly* and *Iqbal*." *Id*.  The objective is "to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Galdieri-Ambrosini v. National Realty & Development Corp*., 136 F.3d 276, 291-292 (2d Cir. 1998).

Viewing the facts in a light most favorable to Plaintiff, as I am required to do at this stage, Plaintiff still does not state a claim for unlawful workplace retaliation in violation of Title VII.

Plaintiff's Title VII retaliation claim against Defendant Medrite Testing fails because she does not allege that she engaged in a protected activity – an absolute prerequisite to pleading a viable retaliation claim.

Plaintiff does not allege that she told anyone in a supervisory role at Medrite Testing – or, for that matter, that she told anyone at all – that she was the victim of discrimination before she was fired.

To state a claim for retaliation under Title VII, Plaintiff must first allege that she engaged in a protected activity.  In this context, engagement in a protected activity refers to any action taken to protest or oppose statutorily prohibited discrimination. *Davis-Bell v. Columbia Univ*., 851 F.

---

[1] An employer violates Title VII when a retaliatory motive contributes to an adverse employment action, even if it is not the sole cause of the action. *Terry v. Ashcroft*, 336 F.3d 128, 140–41 (2d Cir.2003). But a retaliatory motive must be at least a "substantial" or "motivating factor" behind the adverse action. *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir.2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Supp. 2d 650, 682 (S.D.N.Y. 2012); Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e–3(a).  Opposition to a Title VII violation need not rise to the level of a *formal* complaint in order to receive statutory protection.  *Davis-Bell*, 851 F. Supp. 2d at 682.  "The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including complaints to management." *La Grande v. DeCrescente Dist. Co., Inc*., 370 Fed. Appx. 206, 212 (2d Cir.2010).

However, a claim for retaliation cannot be maintained where the plaintiff merely thought about opposing a discriminatory practice, and that is all that Plaintiff alleges. The Amended Complaint alleges that Plaintiff (1) asked a supervisor (Manager David) whether complaining about a coworker would result in that coworker's termination, and (2) "continued to contemplate" how and to whom she would report Rodriguez' inappropriate behavior.

But on the facts as alleged by her, Plaintiff did not report Rodriguez' behavior to anyone until after she was fired. Plaintiff's statement to Manager David does not qualify as protected activity, since by her own admission, she identified neither any particular employee nor any specific inappropriate workplace conduct about which she was complaining. As for the statement she made after being told that she was being fired because of Rodriguez' complaint about her – she "exclaimed" to the human resources representative that Rodriguez "was touching her face," and that she "asked if they would fire him" FAC ¶¶ 29-31 – on the facts pleaded it is perfectly apparent that she was not fired because she made that statement. Rather, she made the statement *after she had already been told that she was losing her job.*

Even viewing the facts most favorably to Plaintiff, the decision to end her employment was made before she uttered a word of complaint about Rodriguez or about his comments and/his . It is well settled that an adverse employment action set in motion *before* a plaintiff engaged in

protected activity "cannot serve as the basis for a retaliation claim." *Cayemittes v. City of New York Dep't of Hous. Pres. & Dev*., 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013), *aff'd*, 641 Fed. Appx. 60 (2d Cir. 2016) (summary order); *see also Young v. Westchester Cty. Dep't of Soc. Servs*., 57 Fed Appx. 492, 495 (2d Cir.) ("where the adverse action was already ongoing at the time of the protected activity . . .. logic precludes any inference of causation"), *cert. denied*, 539 U.S. 959, 123 S.Ct. 2652, 156 L.Ed.2d 658 (2003). As the Second Circuit observed in *Harris v. N.Y. State Dep't of Corr. Serv*., 616 F. App'x 453, 455 (2d Cir. 2015) (summary order), a "retaliation claim fails [where] there is no evidence that [plaintiff] engaged in a protected activity: she never complained of sexual harassment or sex discrimination." The Circuit explained that while the plaintiff "asserts that she now holds such a belief," her "post-termination insight cannot bear upon whether she engaged in a protected activity before being terminated." *Id*. Here too, Plaintiff does not allege that she complained to the human resources representative about any purported sexual harassment or sex discrimination that she experienced while working at Medrite until after she was fired.

Accordingly, Count I is dismissed.

## II.     THIS COURT WILL EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE AND CITY LAW CLAIMS.

Because the only federal claim brought in this case – Count I for Title VII retaliation – is dismissed (as discussed above), and because complete diversity of citizenship among the parties is lacking, the court no longer has subject matter jurisdiction over the remaining state and city law claims. But the court can elect to exercise supplemental jurisdiction over the remaining claims.

In an exercise of its discretion, this court will exercise supplemental jurisdiction over the remaining state and city law claims.

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case

or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017). Claims are considered part of the same case or controversy if they derive from a common nucleus of operative fact, and claims derive from the same nucleus of operative fact when the facts underlying the claims "substantially overlap." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011); *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Federal law spells out several circumstances in which it is appropriate for a court to decline supplemental jurisdiction. One of those is where the district court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c). Because Plaintiff's federal claim under Title VII fails, this court *may* decline to exercise supplemental jurisdiction over Plaintiff's remaining claims under the NYSHRL and NYCHRL. *See* 28 U.S.C. § 1367(c)(3); *e.g.*, *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 522 (S.D.N.Y. 2010) (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL following dismissal of Title VII claims). However, as the Supreme Court has held (in discussing § 1367's predecessor judicial doctrine of pendent jurisdiction) whether or not to exercise or decline is "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966).

The four factors to be considered in deciding whether to exercise supplemental jurisdiction are (1) the trial court's familiarity with the subject matter of the suit and the work performed by the law firm in connection therewith; (2) the court's responsibility to the members of the bar who practice before it; (3) the convenience of litigating in federal as opposed to state court; and (4) considerations of judicial economy. *Cluett Peabody & Co. v. CPC Acquisition Co., Inc*., 863 F.2d 251 (2d Cir. 1988).

Ordinarily I would decline to exercise supplemental jurisdiction over the non-federal claims, as my familiarity with the subject matter of the suit is limited to my review of the FAC and the writing of this decision. However, because on its face the Complaint fails to state a claim for retaliation under either State or City law, it would not be appropriate to require a state court colleague to become familiar with this matter.  Judicial economy counsels in favor of getting rid of the entire lawsuit.  No complex issues of state law are involved in reaching this conclusion. The NYSHRL and NYCHRL violations allege mirror their federal counterpart violations of Title VII, and remitting this matter to the New York State Supreme Court would inevitably result in considerable delay. I will, therefore, exercise supplemental jurisdiction over the various local law claims – if only to dismiss them.

## III.   THE NYSHRL AND NYCHRL RETALIATION CLAIMS ARE DISMISSED.

Counts II and IV are retaliation claims brought pursuant to the NYSHRL and the NYCHRL, respectively.  I address each claim in turn.

### i.   *Plaintiff fails to state a NYSHRL retaliation claim.*

Count II is state law retaliation claim brought against Defendants Medrite Testing and Christopher Schrier for retaliation in violation of the NYSHRL.  Under the NYSHRL, it is unlawful to retaliate or discriminate against an employee because she "has opposed any practices forbidden under this article or because ... [she] has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7).

Plaintiff alleges that Defendants violated the NYSHRL "by retaliating and otherwise discriminating against the Plaintiff by terminating and sustaining her termination because she opposed and made charge of sex and gender harassment in the workplace." FAC, ¶ 44.

Retaliation claims brought under the NYSHRL are governed by the same standards as retaliation claims brought under Title VII. *Zann Kwan v. Andalex Grp*. LLC, 737 F.3d 834, 843 (2d Cir. 2013). That means Plaintiff's NYSHRL retaliation claim fails for the same reason her Title VII retaliation claim fails: she fails to allege that she engaged in any protected activity whatever prior to her termination, so she necessarily fails to allege that that she suffered any adverse employment action as a result of her engagement in a protected activity. She does not allege that she "opposed and made charge of sex and gender harassment in the workplace," and she does not (and cannot) allege that she was terminated as a result. As discussed above, the only "complaint" that Plaintiff alleges to have made about Rodriguez occurred *after* Plaintiff was fired. FAC ¶¶ 29-31).

Defendants' motion to dismiss Count II is granted.

 ii. *Plaintiff fails to state a NYCHRL retaliation claim.*

Count IV is a NYCHRL retaliation claim against both Defendants. The NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has ... opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7). The "adverse employment action" pleading standard is more lenient under the NYCHRL than under Section 1981 and the NYSHRL.[2] To state a retaliation claim under the NYCHRL, a plaintiff "does not have to allege a materially adverse employment action," only a retaliatory act that is "likely to deter a person from engaging in the protected activity." *Bermudez*, 783 F. Supp. 2d at 588.

---

[2] Under the NYCHRL, "The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7)

But the more lenient NYCHRL standard does not save Plaintiff's retaliation claim under City law.  For the same reasons her Title VII and NYSHRL retaliation claims fail, so too does her NYCHRL claim.  Plaintiff does not allege facts from which it could be concluded that she was fired for engaging in protected activity – which, in this case, would be complaining about Rodriguez' behavior.[3] Rather, she alleges that she was thinking about complaining; she was fired; and then and only then did she say anything that might, generously construed, qualify as a complaint about gender discriminatory behavior.

Count IV is dismissed.

## IV.   THE AIDING AND ABETTING CLAIMS ARE DISMISSED.

Plaintiff brings claims for aiding and abetting discriminatory conduct in violation of the NYCHRL and the NYSHRL against Defendants Medrite Testing and Christopher Schrier.  *See* Counts III and V.

Under both the NYSHRL and the NYCHRL, "an individual employee may be held liable for aiding and abetting discriminatory conduct." *Krause v. Lancer & Loader Grp*., 40 Misc.3d 385, 965 N.Y.S.2d 312, 323 (Sup. Ct., N.Y. Cty. 2013). The language of the NYSHRL and the NYCHRL is identical as to aiding and abetting liability; both provide that "it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6); N.Y.C. Admin Code § 8-107(6)); *see also Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) ("because the language of the two laws is virtually identical," the same standard governs aiding and abetting claims under the NYSHRL and NYCHRL).

---

[3] I will, for purposes of this motion, assume that such a complaint would qualify as protected activity, though an argument could be made that it does not.

To state an aiding and abetting claim, Plaintiff must plead that the alleged aider and abettor "actually participated" in the discriminatory conduct of the primary violator. *Farmer v. Shake Shack Enters.*, LLC, 473 F.Supp.3d 309, 337 (S.D.N.Y. 2020).

The alleged aider and abettor need not have had an employer-employee or supervisory relationship with the plaintiff.  *See* N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6). "[A] co-worker who actually participates in the conduct giving rise to a discrimination claim [can] be held liable under the NYSHRL [or NYCHRL] even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold*, 366 F.3d at 158 (internal quotation and citation omitted). And, "A supervisor's 'failure to take adequate remedial measures' in response to a complaint of discrimination" can, with proper factual allegations, constitute actual participation. *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014) (quoting *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999)).

But liability "must first be established as to the employer/principal before an individual may be considered an aider and abettor." *Davis-Bell v. Columbia University*, 851 F. Supp. 2d 650, 688 (S.D.N.Y. 2012).  That means that Plaintiff must first "adequately allege that the employer engaged in discrimination or retaliation under the standards of the NYSHRL and NYCHRL." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing *Murphy v. ERA United Realty*, 251 A.D. 2d 469, 472, 674 N.Y.S.2d 415 (2d Dep't 1998)).

Because Plaintiff has not stated a viable claim for retaliation or for any other a primary violation of the NYSHRL or the NYCHR, there is nothing for Defendants to have aided or abetted. That fact alone is enough to dismiss Plaintiff's aiding and abetting claims altogether.  But the aiding and abetting claims fail as a matter of law for another reason: Plaintiff has not alleged that

either Defendant – Medrite Testing or Christopher Schrier[4] – shared the discriminatory or retaliatory intent or purpose of some principal actor.  *See Fried v. LVI Servs., Inc*., No. 10 Civ. 9308 (JSR), 2011 WL 2119748, at *8 (S.D.N.Y. May 23, 2011) (aiding and abetting "liability requires that the aider and abettor share the intent or purpose of the principal actor").

The aiding and abetting claims – Counts III and V – are dismissed.

## V.    THE NYCHRL VICARIOUS LIABILITY CLAIM IS DISMISSED.

Finally, Count VI is a vicarious liability claim against Medrite Testing brought under the NYCHRL.  Plaintiff states that Medrite Testing is vicariously liable for its "employed managers and supervisors violating and engaging in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff by terminating and sustaining her termination because she opposed and made charge of sex and gender harassment in the workplace." FAC ¶¶ 54.

Section 8–107(13)(b) of the NYCHRL imposes vicarious liability on an employer for discriminatory acts by its employees or agents.[5] Under the NYCHRL, vicarious liability for the discriminatory conduct of an employee can be imposed in three circumstances: where the offending employee "exercised managerial or supervisory responsibility," (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action," and (3) where the employer "should have

---

[4] It is certainly true that a supervisor's "failure to take adequate remedial measures in response to a complaint of discrimination can, with proper factual allegations, constitute actual participation."  *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014).  But Plaintiff does not allege that she ever made a complaint to Mr. Schrier. She does not even allege that she ever spoke to Mr. Schrier at all, let alone about the purported sexual harassment she experience while on the job.  So no aiding and abetting liability can attach to Defendant Schrier based on Plaintiff's vague allegations.

[5] "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section ... where [t]he employee or agent exercised managerial or supervisory responsibility." N.Y.C. Admin. Law § 8-107(13).

known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent [it]." *Baez v. Anne Fontaine USA, Inc*., No. 14-CV-6621, 2017 WL 57858, at *5–6 (S.D.N.Y. Jan. 5, 2017) (quoting *Zakrzewska v. New Sch*., 14 N.Y.3d 469, 902 N.Y.S.2d 838, 928 N.E.2d 1035, 1039 (2010)); *see also* N.Y.C. Admin. Code § 8-107(13).

Plaintiff's claim easily fails because she has not alleged any instance of discrimination or retaliation to which vicarious liability might attach. As discussed at length above, there was no retaliation because Plaintiff did not engage in a protected activity prior to her termination.

Count VI is dismissed.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the First Amended Complaint is dismissed.

The Clerk of Court is respectfully directed to remove the motion at Docket Number 20 from the court's list of open motions and to close this case. This constitutes a written opinion.

Dated: April 25, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL